**E-FILED**
Tuesday, 06 December, 2016  09:14:58 AM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS

RICKY L. NELSON,                          )
                                          )
        Petitioner,                )
                                          )
    v.                                  )        Case No. 16-1114
                                          )
UNITED STATES OF AMERICA,                 )
                                          )
        Respondent.                )

# O R D E R

This matter is now before the Court on Petitioner, Ricky Nelson's ("Nelson"), Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 and the Government's Response.  For the reasons set forth below, the § 2255 Motion [1] is DISMISSED.

## BACKGROUND

On June 4, 2014, Nelson entered a guilty plea to charges of conspiracy to manufacture methamphetamine in violation of 21 U.S.C. §§ 846, and 841(a)(1) in the United States District Court for the Central District of Illinois.  On November 14, 2014, he was sentenced to 144 months' imprisonment followed by a term of supervised release.  Contrary to the direct appeal waiver that he agreed to as part of his plea agreement, Nelson filed a notice of appeal, which was voluntarily dismissed on April 29, 2015.

Although he also waived his right to appeal and pursue collateral relief pursuant to § 2255 in ¶¶ 10 and 11 of the Plea Agreement, Nelson has now filed the instant Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255.  In his Motion, Nelson attempts to collaterally attack his conviction based on allegations that

his counsel provided ineffective assistance by coercing him to plead guilty to a crime that he didn't commit.  This Order follows.

## Discussion

A petitioner may avail himself of § 2255 relief only if he can show that there are "flaws in the conviction or sentence which are jurisdictional in nature, constitutional in magnitude or result in a complete miscarriage of justice."  Boyer v. United States, 55 F.3d 296, 298 (7th Cir. 1995), *cert. denied*, 116 S.Ct. 268 (1995).  Section 2255 is limited to correcting errors that "vitiate the sentencing court's jurisdiction or are otherwise of constitutional magnitude."  Guinan v. United States, 6 F.3d 468, 470 (7th Cir. 1993), *citing* Scott v. United States, 997 F.2d 340 (7th Cir. 1993).  A § 2255 motion is not, however, a substitute for a direct appeal.  Doe v. United States, 51 F.3d 693, 698 (7th Cir.), *cert. denied*, 116 S. Ct. 205 (1995).

Here, Nelson would appear to be barred from bringing this § 2255 motion by virtue of the fact that his Plea Agreement contains a waiver of his right to bring a collateral attack on his sentence. He asks the Court to vacate his conviction in order to allow him to proceed with his claim of actual innocence.  So long as the Plea Agreement stands, however, the waiver of the right to appeal or pursue collateral relief must generally be enforced.  Id., *citing* United States v. Wagner, 103 F.3d 551 (7th Cir. 1996); Jones v. United States, 167 F.3d 1142, 1144 (7th Cir. 1999); United States v. Nelson, 124 F.3d 206, 1997 WL 374712, at *1 (7th Cir. July 1, 1997); United States v. Blinn, 490 F.3d 586, 588 (7th Cir. 2007).

This circuit has recognized that the right to pursue a collateral attack pursuant to § 2255 survives "with respect to those discrete claims which relate directly to the

negotiation of the waiver." Jones, 167 F.3d at 1144-45. Nelson does not contend that he received ineffective assistance of counsel specifically in connection with the negotiation of the waiver or that the waiver was not knowingly and intelligently made. To the contrary, he signed the Plea Agreement containing the waivers and affirmed that his acceptance of the waivers was made knowingly and voluntarily in order to receive the benefits under the agreement. He does argue that misinformation provided by counsel rendered his entry into the plea agreement involuntary and unknowing.

The seminal case on ineffective assistance of counsel is Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the Court stated that in order for a prisoner to demonstrate that counsel's performance fell below the constitutional standard, the petitioner would have to show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88. A prisoner must also prove that he has been prejudiced by his counsel's representation by showing "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The courts, however, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 690.

To satisfy Strickland's prejudice prong in this case, Petitioner must demonstrate through objective evidence a reasonable probability that, but for counsel's purportedly erroneous advice, he would not have entered the guilty plea and would have insisted upon going to trial. United States v. Woolley, 123 F.3d 627, 635 (7th Cir. 1997). "It is far from obvious how a petitioner is expected to make such a showing, but it is clear that 'merely making such an allegation is insufficient.'" United States v. Ryan, 986 F.Supp. 509, 513 (N.D.Ill. 1997), citing Key, 806 F.2d at 139; see also McCleese v. United

3

States, 75 F.3d 1174, 1179 (7th Cir. 1996) (requiring that the petitioner establish through objective evidence that he would not have accepted the plea).

Here, there are no factual assertions to the effect that Nelson's attorney rendered ineffective assistance in negotiating the waivers in his Plea Agreement.   He does argue that but for the purportedly misleading advice of counsel, he would have rejected the Plea Agreement and insisted on proceeding to trial without the Agreement. Contrary to these recent assertions, the record before the Court unequivocally demonstrates that Nelson acted knowingly and freely in entering into the Plea Agreement, including the waiver provisions.  Had he truly not wished to enter into the Agreement, not understood the proceedings in which he participated, or been caught unaware by the provisions, it would seem only reasonable that he would have made some attempt to correct the factual record or bring his plight to the attention of the Court at sentencing.

A review of the transcript of the plea hearing reveals that, after a detailed discussion of the maximum sentence he could face depending on the nature of the loss, Nelson received a lengthy explanation of the waiver provision and its consequences during the plea colloquy.  As set forth below, this explanation was more than sufficient to remedy any misinformation (or lack of information) that may have been provided by his counsel with respect to the waiver or penalty provisions, and hence, he has failed to demonstrate actual prejudice under Strickland.  This same dialogue also demonstrates the knowing and voluntary nature of Nelson's guilty plea, as well as his competency.

When the Court accepted Nelson's guilty plea, it held a lengthy change of plea hearing pursuant to Rule 11 of the Federal Rules of Criminal Procedure.  Rule 11 "provides protection for those who voluntarily choose to waive their constitutional right to a trial by pleading guilty while ensuring an adequate record to insulate the plea from

4

appellate and collateral attacks." Key v. United States, 806 F.2d 133, 136 (7th Cir. 1986). Rule 11 also provides for a colloquy that "exposes the defendant's state of mind in the record through personal interrogation." Id., *citing* United States v. Fountain, 777 F.2d 351, 356 (7th Cir. 1985). This aspect of the Rule 11 hearing is especially important with respect to subsequent collateral proceedings, because the representations made by the defendant during a plea colloquy, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceeding. Id., *citing* Thompson v. Wainwright, 787 F.2d 1447 (11th Cir. 1986); Blackledge v. Allison, 431 U.S. 63, 97 S.Ct. 1621, 1629 (1977). Furthermore, "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge, 97 S.Ct. at 1629.

After a careful review of the transcript of Petitioner's Rule 11 hearing, the Court finds that he has failed to overcome the strong presumption of verity which attached to the statements of voluntariness and understanding that he made during that hearing. The pertinent portion of the record reveals the following colloquy between Nelson and the Court after he was placed under oath:

Q.    How far did you go in school?

A.    GED plus college.

Q.    Can you read and write?

A.    Yes.

Q.    Have you been treated recently for any mental illness?

A.    No, sir.

* * *

Q.    Are you currently on any medications?

5

A.      Just allergy medication.

Q.      Are you taking the prescribed dosage?

A.      Yes.

Q.      Are you currently under the influence of any drug, medication or alcoholic beverage?

A.      No, sir.

Q.      Have you received a copy of the indictment, that would be the charges pending against you?

A.      Yes, sir.

Q.      And discussed those with Mr. Snyder?

A.      Yes, sir.

Q.      Did you have the opportunity to read and discuss the plea agreement with Mr. Snyder before you signed it?

A.      Yes, sir.

Q.      Is this in fact your signature on page 13 of the plea agreement?

A.      Yes, sir.

Q.      Do you understand the terms of the plea agreement?

A.      I do.

Q.      Has anyone made any promises or assurances to you that are not in the plea agreement in order to get you to plead guilty?

A.      No, sir.

Q.      Has anyone threatened you in any way to get you to enter into this plea agreement?

A.      No, sir.

Q.      Okay.  The plea agreement indicates that you are going to plead guilty to conspiracy to manufacture methamphetamine, a Schedule II controlled substance.  Is that your understanding?

6

A.      Yes.

Q.      All right.  To sustain the charge of conspiracy to manufacture methamphetamine, a Schedule II controlled substance, as set forth in the indictment, the United States must prove the following elements beyond a reasonable doubt: One, that the alleged conspiracy existed.  Two, that you knowingly and intentionally became a member of the conspiracy.  And three, the conspiracy involved less than 50 grams of a mixture and substance containing a detectable amount of methamphetamine.

Mr. Chambers:   Your Honor, number three should be "involved more than 50 grams."  This is a (b)(1)(B) plea agreement.

Q.      Okay.  Mr. Snyder, do you agree with that?

Mr. Snyder:     That's fine.

Q.      Mr. Nelson, do you understand that?

A.      Yes.

Q.      So, number three would be that the conspiracy involved more than 50 grams of a mixture and substance containing a detectable amount of methamphetamine.  Do you understand the elements of the charges the government would have to prove beyond a reasonable doubt before you could be convicted?

A.      Yes.

Q.      Page three, paragraph six, this count carries a minimum mandatory sentence of five years and a maximum sentence of 40 years in prison, a fine of $2 million, and a special assessment of $100.  It also carries a special mandatory supervised release term of at least four years and up to any number of years including life.  If you have a prior felony drug conviction, this count carries a minimum mandatory sentence of ten years, maximum sentence of life, a maximum fine of $4 million, and a special assessment of $100.  It also carries a special mandatory supervised release term of at least eight years and up to any number of years including life.  Do you understand the potential penalties?

A.      Yes, sir.

* * *

Q.      Paragraphs 10 and 11 on pages four and five discusses your waiver of appeal from conviction and sentence and your waiver of

7

right to collateral attack.  Paragraph 10 tells you that federal law affords you a right to appeal a final decision of the district court. And federal law affords you a right to appeal the conviction and/or the sentence imposed.  This paragraph goes on to inform me that you have thoroughly discussed these rights with Mr. Snyder, that you knowingly and voluntarily waive your right to appeal any and all issues relating to this plea agreement and to the conviction and to the sentence in order to enter into this plea agreement with the government; is that your understanding?

A.      Yes, sir.

Q.      Do ou have any questions about that?

A.      No, sir, I do not.

Q.      Similarly, paragrah 11 tells you that you have a right to attack the conviction and/or the sentence imposed collaterally on the grounds that it may have been imposed in violation of the Constitution or laws of the United States or that you received ineffective assistance from your counsel or that the Court was without proper jurisdiction or that the conviction and/or the sentence was otherwise subject to collateral attack.  This paragraph, again, goes on to tell me that you have thoroughly discussed this with Mr. Snyder, that you fully understand these rights and that you knowingly and voluntarily waive this right to collaterally attack the conviction and/or the sentence in order to enter into this plea agreement with the government.  Is that, correct?

A.      Yes, sir.

Q.      Do you have any questions about that?

A.      No, sir, I do not.

* * *

Q.      Do you understand your rights to a trial by jury?

A.      Yes, sir.

Q.      At either trial you are presumed innocent of the charge against you and that you could not be convicted unless after hearing all of the evidence the jury or the judge believe that the United States had met its burden of proof proving you[r] guilt beyond a reasonable doubt.  Do you understand that?

8

A.      Yes, sir.

*  *  *

Q.      Do you understand that by pleading guilty you will be waiving these rights and there will be no trial?

A.      I do, Your Honor.

Q.      I'm going to ask the government at this time, Mr. Chambers, for a factual basis please.

Mr. Chambers:   Your Honor, if this case were to go to trial, the government would prove beyond a reasonable doubt that during the time period alleged in the indictment, the defendant conspired and agreed with others to manufacture methamphetamine in Hancock County, within the Central District of Illinois and elsewhere.  In furtherance of the conspiracy, the defendant and others obtained the ingredients and equipment necessary to manufacture methamphetamine, provided a location for the manufacture of methamphetamine, manufactured and assisted in the manufacturing of methamphetamine, and possessed methamphetamine.  Your Honor, the issue of actual drug weight as the factual basis says, the actual pseudoephedrine applied by the defendant was 48 grams.  So the amount that he conspired to manufacture, that he provided the pseudoephedrine for, was less than 50 grams of a mixture and substance containing a detectible amount of methamphetamine. However, the overall conspiracy and the amount reasonably foreseeable to the defendant was more than 50 grams. Consequently, it was a (b)(1)(B) sentencing structure but the amount of pseudoephedrine that he personally provided was 48 grams which is under 50 grams on a one-to-one ratio.

Q.      Thank you, Mr. Chambers.  Mr. Snyder, do you believe the government can produce that evidence at trial?

Mr. Snyder: Yes, sir.

Q.      Mr. Nel[s]on, did you hear what I was just told?

A.      I did, Your Honor.

Q.      Are those facts correct as they pertain to your case?

A.      Yes, they are, Your Honor.

Q.      And are they in part the basis for your plea of guilty?  Are they then in part the basis for your plea of guilty today?

A.      Yes, Your Honor, they are.

Q.      All right.  Your sentence will ultimately be determined by a combination of advisory sentencing guidelines, possible authorized departures from guidelines and other statutory sentencing factors.  I realize as you sit here today there is a mandatory minimum in place but have you and Mr. Snyder had a chance to talk about how the advisory Sentencing Guidelines might apply to your case?

A.      Yes, Your Honor, we have.

Q.      Mr. Snyder, any estimate you are able to give?

Mr. Snyder:      Your Honor, assuming that the Court accepts the stipulations contained in paragraphs 21 and 22, the number that I arrive at is an offense category of 25 and a criminal history of VI which would put us at 100 months to 137 months.

Q.      Okay.  In addition then to that, I won't be able to determine, sir, the advisory guideline range for your case until after the Presentence Report has been completed, you and the government have had an opportunity to review the report and challenge any reported facts or the application of the guidelines as recommended by the Probation Officer.  So a sentence ultimately imposed may be different from any estimate that Mr. Snyder gave you.  Do you understand?

A.      Yes, sir.

* * *

Q.      Okay.  At this time, sir, do you have any questions about the charges against you?

A.      No, sir.

Q.      The potential penalties?

A.      No, sir.

Q.      Your rights to trial?

A.      No, sir.

10

Q.      Your rights to appeal or collateral attack and the waiver of those rights?

A.      No sir, I do not.

Q.      With that in mind then how do you plead to the conspiracy to manufacture methamphetamine, a Schedule II controlled substance.

A.      I plead guilty, Your Honor.

Q.      I find that you are fully competent and capable of entering an informed plea; that you are aware of th nature of the charges and the consequences of the plea; that the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense.  The plea is therefore accepted and you are now adjudged guilty of that offense.

(Change of Plea Transcript at 3 -15.)

The Court finds that nothing in the record even remotely suggests that Nelson did not knowingly and voluntarily enter the plea agreement, including the waiver provisions contained therein.  To the contrary, it clearly indicates that he expressly acknowledged the potential penalties he faced and waived his rights to appeal and pursue collateral relief after extensive questioning and explanation by the Court.  Thus, the record also demonstrates that the Court provided him with a lengthy and detailed explanation of the possible penalties and waiver provisions that was more than adequate to supplement or correct any lack of information or misinformation that may have been provided by counsel, and Nelson repeatedly denied having any questions.  Nelson clearly and unequivocally acknowledged that the sentence ultimately imposed could be different from any estimate given by his attorney and could even be higher.  After receiving this explanation, Nelson proceeded to state that he was acting voluntarily and understood everything as it had been explained to him by the Court.

Therefore, the record before the Court unequivocally demonstrates that Nelson acted knowingly and freely in entering into the plea agreement, including the waiver provisions.  Had he truly not wished to plead guilty, not understood the proceedings in which he participated, or been caught unaware by the potential penalty or waiver provisions, it would seem only reasonable that he would have made some attempt to correct the factual record or bring his plight to the attention of the Court.

Nelson states that counsel advised him that without the plea agreement, he faced a mandatory life sentence, which was possible and even probable given the original charges and his criminal history.  He even acknowledged this by not objecting to ¶ 105 of he PSR, where it notes that "Without the plea agreement, the defendant would have been convicted under 21 U.S.C. §841(b)(1)(A), and he would have been sentenced to a mandatory term of life imprisonment without the possibility of parole." By the time of the plea colloquy, where Nelson pled guilty to a reduced charge, there was no mention of a mandatory life sentence by anyone. The Court clearly outlined the possible penalties for his charges, and counsel's projected guideline range ended up being spot on for where he was ultimately sentenced.  However, even if counsel's estimate had been much less than found in the PSR, would not have rendered his assistance ineffective per se.

Nelson further claims that he is actually innocent of the conspiracy that he pled guilty to in this case.  However, he expressly acknowledged and agreed with the factual basis for the charge both as set forth in the plea agreement and during the plea colloquy. Nelson's protestations to the contrary are insufficient to overcome the strong presumption of verity that attached to his statements under oath during the plea

12

colloquy and by virtue of his signing the plea agreement and attesting to the following

paragraph:

> I have read this entire Plea Agreement carefully and
> have discussed it fully with my attorney.  I fully
> understand this Agreement, and I agree to it
> voluntarily and of my own free will.  I am pleading
> guilty because I am in fact guilty, and I agree that the
> facts stated in this Agreement about my criminal
> conduct are true.  No threats, promises, or
> commitments have been made to me or to anyone
> else, and no agreements have been reached,
> expressed or implied, to influence me to plead guilty
> other than those stated in this written Plea
> Agreement.  I am satisfied with the legal services
> provided by my attorney.  I understand that by signing
> below I am stating I agree with everything stated in
> this paragraph, and I am accepting and entering into
> this Plea Agreement.

Even after hearing that any objections to the PSR had been resolved and that

there were no corrections to be offered by either side, Nelson said nothing that

suggested any lack of understanding or comprehension of the proceedings or waivers

or that he did not believe himself to be guilty of the crime charged.  This remains true

even after the Court heard in camera about Nelson's cooperation and Nelson had a

chance to address the Court.  His counsel argued that his co-defendants, Jones and

Swartz, were far more involved in the conspiracy but faced far less time as a result of

Nelson's criminal history.  In his statement of elocution, he simply apologized for what

he had done and the loss that he had caused through his actions.  He stated that he

had been alarmed by "the affect that had [sic] had on me, Carol, her son, it is scary."

(Sentencing Transcript at 13.)  Carol refers to his co-defendant, Carol Swartz, and her

son is co-defendant Joseph Jones, with whom he now denies having been in a

conspiracy. Nelson explained that he got involved with meth to get attention and draw

people to him, but that he didn't need that anymore.  He did not in any way express his innocence or lack of involvement in the conspiracy that he pled guilty to just months before.

Essentially, Nelson's claims of error boil down to the fact that counsel's assessment of his sentencing exposure was wrong.  It is well-settled that counsel's inaccurate predictions of petitioner's sentence does not constitute ineffective assistance of counsel. *See* Barker v. United States, 7 F.3d 629, 633 (7th Cir.1993); Chichakly v. United States, 926 F.2d 624, 630 (7th Cir.1991); United States v. Arvanitis, 902 F.2d 489, 494 (7th Cir.1990). The reason for this is that the sentencing consequences of guilty pleas are very difficult to predict as a result of the discretion available to the sentencing court. *See* United States v. Barnes, 83 F.3d 934, 939-40 (7th Cir.1996). Waiving trial entails the inherent risk that the good faith evaluations of a competent attorney will turn out to be mistaken as to what a court's judgment might be. *See* Arvanitis, 902 F.2d at 494.

Nelson has failed to demonstrate that ineffective assistance of counsel negated the knowing or voluntary nature of his plea or the waiver itself, that the plea or waiver was a product of coercion, or that the trial court relied on some constitutionally impermissible factor, such as race, in imposing sentence.  Accordingly, the Court now holds that Nelson's guilty plea, including the waiver of his right to pursue collateral relief, was both knowing and voluntary and operates to bar him from pursuing further habeas corpus relief.  It should also be noted that his assertion of actual innocence is also contradicted by the record in the underlying criminal case.  This § 2255 Motion is therefore frivolous.  *See* Barker v. United States, 7 F.3d 629, 633 (7th Cir. 1993); Keller v. United States, 657 F.3d 675, 681 (7th Cir. 2011).

**CONCLUSION**

For the reasons set forth herein, the Court cannot find that there has been any credible showing that but for the alleged unprofessional errors of counsel, there is any reasonable probability that the result of this proceeding would have been different, as the record clearly demonstrates that Nelson knowingly, intelligently, and voluntarily waived his right to bring both an appeal and collateral attack on his conviction and sentence.  Accordingly, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 [1] is DISMISSED.  This matter is now terminated.

ENTERED this 6th day of December, 2016.


s/ James E. Shadid                     
James E. Shadid
Chief United States District Judge